Filed 2/20/14  In re D.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re D.G., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br>    Plaintiff and Respondent,<br><br>v.<br><br>Daniel G.,<br><br>    Defendant and Appellant. | E058165<br><br>(Super.Ct.No. RIJ1201227)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

A.R., mother of four children, was involved in a physical altercation with her oldest child, a teenaged boy with Oppositional Defiant Disorder, during which the boy sustained scratches and a bloody nose. Daniel G. is the father of the two youngest children, D.G. and Del. G., who are the subjects of this appeal. All four children were detained, including the youngest children and a dependency petition was filed as to all the children. As to this father, the petition alleged that the children came within Welfare and Institutions Code,[1] section 300, as a result of the physical abuse of mother's oldest child, father's failure to protect his stepson, an incident of domestic violence occurring in 2007 or 2008, and risk of abuse to the siblings. The juvenile court made true findings on all the allegations and father appealed.

On appeal, father argues there is insufficient evidence to support the court's findings on the allegations of failure to protect and domestic violence as to D.G. and Del.G. We affirm.

## BACKGROUND

A.R. is the mother of four children: N.V., age 13; A.V., age 10; D.G., age 4; and Del. G., age 3. Daniel G. is the father of D.G. and Del. G. On November 7, 2012, mother brought N.V. to the Riverside County Regional Medical Center Emergency Treatment Services (ETS) on a voluntary basis. He was admitted for suicidal thoughts pursuant to section 5150, after confrontations with his mother over his failing grades, his

_____

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

2

verbal abuse of mother, and a runaway episode. He was discharged with a diagnosis of Oppositional Defiant Disorder.[2]

On November 29, 2012, mother and N.V. had another confrontation. N.V. reported that mother yelled at him about being late for school and he responded by calling her "stupid." Mother asked for his cell phone and he gave it to her and went upstairs to finish getting ready for school, mumbling, under his breath, that his mother was stupid as he went upstairs. Mother followed N.V. upstairs, to his bedroom, and lifted her hand as if to strike him. N.V. lifted his hands to block her, but she thought he was going to hit her. Mother pushed N.V., and he grabbed her arms to prevent her from pushing him as she held onto his shirt. They locked arms and mother head-butted N.V.; somehow they fell to the ground.

While on the ground, N.V. tried to get free and received scratches on his neck and back. Mother grabbed his leg as he did so and he kicked her. Then N.V. grabbed a laundry basket and threw it at her to prevent her from following him. A.V., age 10, heard the commotion and went upstairs, as did father. Both observed N.V. on top of mother with his hands around mother's neck, choking her. Father came in and told them to calm

---

[2] The social worker repeatedly referred to N.V.'s diagnosis as "Operational Defiant Disorder." The social worker lectured to the mother that once N.V. is engaged in a confrontational situation "he is operating from the sympathetic nervous system and not the limbic nervous system. I explained that the Limbic part of the brain is where the frontal lope [*sic*] is housed, which allows use [*sic*] to make rational decisions. However, the sympathetic nervous system stimulates the adrenal glands triggering a stress hormone that increases the adrenaline in the body and makes a person go into fight or flight mood." We found no medical, psychiatric, or psychological literature to support this theory or advice.

down but did not intervene. N.V. ran out of the house and went to his school. Father asked mother what had happened, and she explained she had head butted N.V. on the nose in self-defense because he was choking her.

A Riverside County Department of Public Social Services (DPSS) social worker interviewed N.V. at his school where N.V. disclosed the physical abuse and disclosed that the previous year mother had thrown a cell phone at him, hitting him in the head. He also reported that his mother and stepfather (father of D.G. and Del. G.) argued regularly because of his mother's moods, and that his mother would tell father to hit her. N.V. described an incident of domestic violence that occurred in 2007, in which the father pushed mother down after she had pushed him. The social worker interviewed N.V.'s school counselor, who described mother's lack of insight as to how her actions impacted N.V.'s behavior and expressed the view that the home was dysfunctional. N.V. was immediately taken into protective custody.

The social worker then interviewed A.V., age 10, at his school. A.V. suffers from Type I diabetes and autism. A.V.'s school had problems with A.V. related to his blood sugar levels and his defiant behavior. On one occasion, A.V. threw shoes at school staff and the police were called. The social worker tried to interview A.V., but he did not say anything. However, his blood sugar was elevated so the social worker took him to the hospital before taking him to an enhanced medical services foster home.

All four children were placed in foster care. On December 3, 2012, DPSS filed a dependency petition alleging nonaccidental physical abuse by mother (§ 300, subd. (a)), neglect and failure to protect or supervise (§ 300, subd. (b)), failure to provide for Nathan

4

and Andrew by their father (§ 300, subd. (g)), and abuse of a sibling (§ 300, subd. (j)) as to A.V., D.G., and Del. G.  The allegations pursuant to section 300, subdivision (b) included an allegation that father knew or reasonably should have known that mother administers inappropriate discipline techniques and failed to protect N.V. (allegation b-3), and an allegation that mother and father have a history of engaging in acts of domestic violence in the presence of the children (allegation b-4).

At the detention hearing, the parents denied the allegations and the court ordered the children detained.  On December 21, 2012, A.V., D.G., and Del.G. were placed in the home of their maternal aunt, while N.V. remained in a foster home.  Prior to the jurisdictional hearing, the social worker submitted an addendum report recommending that D.G. and Del. G. be returned to the home of their parents because they were well-bonded to their mother and not afraid of her.  However, N.V. and A.V. did not want to return home.  A.V. reported that his mother was mean to him, and that she yelled, cursed, and hit him.  The social worker was concerned that if N.V. and A.V. were returned too quickly, it could lead to violence, so it was recommended that they remain out of the home.

The jurisdictional hearing took place on February 26, 2013.  DPSS amended the language of some of the allegations and the parties submitted on the reports.  Father's counsel argued that there was insufficient evidence to sustain allegation b-3, relating to his failure to protect N.V. from mother.  The court disagreed and made true findings on all the allegations.  The court declared D.G. and Del. G. to be dependents, but returned

5

custody of the two children to the parents under Family Maintenance Services.  Father appealed.

**DISCUSSION**

On appeal, father argues there is insufficient evidence to support the true finding that D.G. and Del. G. came within the jurisdiction of the juvenile court pursuant to section 300, subdivisions (b) and (j).  We disagree.

*a.  Standard of Review*

We review the juvenile court's jurisdictional findings for sufficiency of the evidence.  (*In re David M*. (2005) 134 Cal. App. 4th 822, 828, citing *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)  In making this determination, we resolve all conflicts in support of the determination and indulge all legitimate inferences to uphold the court's order.  Additionally, we may not substitute our deductions for those of the trier of fact.  (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.)

*b.  Sufficiency of the Evidence to Support Allegation b-3, Risk of Harm Due to Failure to Protect.*

Allegation b-3 alleged, in general, that father knew or should have known of mother's inappropriate discipline and failed to protect N.V.  At the jurisdictional hearing, father argued that no true finding could be based on this allegation because father was not

6

the biological father of N.V. and had no legal duty to protect him from mother's inappropriate discipline.  On appeal, father appears to have abandoned this argument and cites no authority to support the proposition asserted at trial that a step-parent has no duty to protect stepchildren from abuse within the home.

Instead, father focuses on the fact that with N.V. removed from the home, there is no risk of substantial harm to D.G. or Del. G. within the meaning of section 300, subdivision (b), and that there was no evidence that D.G. or Del. G. were at risk of harm within the meaning of section 300, subdivision (j).

Section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  The legislative purpose of section 300, subdivision (b) (among other subdivisions) is to provide maximum safety and protection for children who are currently being abused, neglected or exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.  (§ 300.2; *In re I.J., supra,* at p. 773, italics omitted.)

Thus, while actual abuse can be a basis for exercising jurisdiction, it is by no means requisite when there is evidence of substantial risk.  (*In re T.V.* (2013) 217 Cal.App.4th 126, 134, citing *In re I.J., supra,* 56 Cal.4th at p. 773.)  Instead there need only be a "substantial risk" of abuse or neglect.  (*Ibid.*)

Here, N.V. described mother as moody; A.V. described her as mean, and father described her as having a temper problem.  Mother's disposition resulted in actual abuse of N.V., notwithstanding N.V.'s own contribution, and possibly A.V.  Mother had lost

7

her temper with N.V.'s siblings and thrown a cell phone, which hit N.V. in the head. Father's history of noninterference with mother's inappropriate discipline, and mother's lack of control, posed a substantial risk of physical or emotional harm to D.G., and Del. G. within the meaning of section 300, subdivision (b).

### c. *Sufficiency of Evidence to Support Allegation j-1, Sibling Abuse*

Subdivision (j) of section 300 applies if (1) the child's sibling has been abused or neglected as defined in specified other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions. (§ 300, subd. (j); *In re I.J.*, *supra*, 56 Cal.4th at pp. 766, 774.) Father concedes the first element has been met. He argues only that there is insufficient evidence of risk to D.G. and Del. G. The record does not support father's position.

Subdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivisions (a), (b), (d), (e), or (i). (*In re I.J., supra,* 56 Cal.4th at p. 774.) In evaluating risk to the child, the juvenile court may consider the propensities or predispositions of the parent in order to determine if he or she is likely act in conformity therewith in the future toward another child. (*In re Mark C.* (1992) 7 Cal.App.4th 433, 442.)

The fact that the abused child is no longer in the home does not mitigate the risk to siblings remaining in the home. (*In re Edward C.* (1981) 126 Cal.App.3d 193, 203.) In *Edward C.,* although the older child was no longer in the home, the reviewing court affirmed the jurisdictional finding under section 300, subdivision (j) because there was

reason to believe father would substitute a younger child as the object of his ruthless drive for religious perfection. (*Ibid.*)

The social worker's jurisdictional report, on which father submitted without objection, demonstrates that mother's poor parenting, lack of impulse control, anger management issues and propensity for violence placed the children's safety at substantial risk. While N.V., the oldest child, felt the brunt of mother's maltreatment up until his removal, A.V. also reported that mother was mean, yelled, cursed and hit him. With N.V. and A.V. removed, there is a risk mother's moodiness and propensity for violence will find another object. (See *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197 [in Rubisela's absence, the father's sexual offenses were likely to focus on his only other daughter], disapproved on a different point in *In re I.J.*, *supra*, 56 Cal. 4th at p. 781.)

Father argues that the nature of the abuse to N.V. was the result of one verbal argument. This is incorrect. The record shows that the year before the instant argument, mother had lost her temper at N.V.'s siblings and had thrown a cell phone, which struck N.V. in the head, causing it to bleed. A.V. also reported that mother was mean, yelled, cursed, and hit him. Father was present on one occasion when A.V. called the police because mother was hitting him. Mother's abuse was not limited to a single incident.

Mother obviously has a very low threshold and experiences difficulty controlling her outbursts of frustration or anger at her children. We recognize that both N.V. and A.V. suffer from disorders which present special challenges for parents. Nevertheless, mother resisted preventive services geared at assisting her in dealing with these challenges, with the result that she lost control and abused her children. Even if the two

9

younger children did not have any behavior disorders, mother's poor anger and impulse control supports the finding that there is a risk of abuse to all of the children.

### d. *Sufficiency of the Evidence to Support Allegation b-4, Risk of Harm Due to Domestic Violence.*

Father also challenges the finding that domestic violence in the home poses a risk of harm to his children, because there was but one physical altercation between the parents. We disagree.

Exposure to domestic violence may serve as a basis for jurisdiction under section 300, subdivision (b). (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Children are at risk of harm because they might wander into a room where it is occurring and be accidentally injured by a thrown object, fist, arm, foot or leg. (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.) Past violent behavior in a relationship is the best predictor of future violence; once violence occurs in a relationship, the use of force will reoccur in 63 percent of these relationships, according to studies. (*Id*. at p. 576.)

Father emphasizes that there has been but one incident of physical violence and relies on *In re J.N.* (2010) 181 Cal.App.4th 1010, 1021. In that case, father drove while under the influence of alcohol and crashed his vehicle, in which his children were passengers. There was no history of chronic substance abuse or alcoholism, but the juvenile court found jurisdiction under section 300, subdivision (b). On appeal, the judgment was reversed due to lack of evidence of current risk of harm. (*In re J.N., supra,* at pp. 1023, 1025.) That case is distinguishable from this case.

10

Here, the social worker's reports, on which all the parties submitted, showed that after the physical altercation that occurred in 2007, the parents argued frequently due to mother's moodiness. Further, father admitted that mother continually attempted to provoke him into hitting her. The children witnessed this conduct by mother and N.V. observed the incident in 2007.

While there may have been only a single episode of physical violence between the parents, there is a history of frequent arguments coupled with mother's attempts to provoke more physical violence. The single episode of physical violence, when coupled with the history of frequent arguments and mother's antagonistic disposition, supports a finding of domestic violence in the home which poses a substantial risk of harm to the children.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

KING
J.

11